SAUNDERS, Plaintiff, v. NATIONAL DAIRY PRODUCTS COR-
PORATION—KRAFT FOODS DIVISION, Defendant and
Appellant: CARRIERS INSURANCE COMPANY and an-
other, Impleaded Defendants and Respondents.

*No. 279. Argued June 4, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 603.)

576

For the appellant there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm* and *Philip R. Brehm*, all of Green Bay, and oral argument by *Philip R. Brehm*.

For the respondents there was a brief by *Cornelisen, Denissen, Kranzush, Kuehn & Condon*, attorneys, and *David J. Condon* of counsel, all of Green Bay, and oral argument by *David J. Condon*.

HANLEY, J. The following issues are presented on this appeal:

1. Whether there were purely questions of law involved on the motion for summary judgment;

2. whether the facts surrounding the injury to the plaintiff fall within the 1943 indemnity agreement;

3. whether the facts surrounding the injury to the plaintiff fall within the 1961 use endorsement in respondent Carriers' policy; and

4. whether respondents are entitled to costs as a matter of right.

### 1. *Questions of Fact or Law.*

The indemnity agreement and insurance policy are set forth in the affidavits supporting and opposing the motions. The supporting and opposing affidavits also incorporate by reference the adverse examinations of the plaintiff and of Paul J. Schiebel from which the following undisputed facts appear: On the morning of January

7, 1963, the plaintiff was operating a tractor-trailer unit owned by L. C. L.; and in the course of his employment with that company had backed the unit up to the loading dock of Kraft in order to take on a load of cheese. Upon stopping the unit he stepped down from the tractor and walked along the driver's side toward the loading dock to ascertain whether the unit was in the proper loading position. The area around the dock was surfaced with gravel and stone. As plaintiff reached a point about eight or 10 feet from the rear of the trailer he slipped on a patch of ice about four feet square which was hidden from view by fresh snow which had fallen that morning to a depth of one inch.

The facts as to how the plaintiff fell are undisputed. Therefore, whether or not these circumstances and conditions fall either within the terms of the indemnity agreement or within the terms of the insurance policy are pure matters of law for the court. We think the trial court rightfully concluded that there were no disputed issues of fact presented before it.

## 2. *Application of 1943 Indemnity Agreement.*

It appears from plaintiff's complaint that Kraft will become liable to the plaintiff only in the event that the proof establishes the plaintiff to have fallen on the ice and that the ice formed as a result of the negligent construction and maintenance of its premises by Kraft. Such negligence, if shown to exist, will be constituted by Kraft's independent acts and is not akin to the liability in negligence in the nature of a nondelegable duty imposed on a general contractor or owner of a building under the safe-place statute when the negligent acts are performed by another party. In such a situation an indemnity agreement is not applicable unless it expressly provides for

indemnification when the indemnitee is the sole negligent party.[2]

Kraft, however, maintains that the unit driven by the plaintiff or other L. C. L. units that were at the loading dock earlier may have negligently contributed to or have been the sole cause of the conditions described in plaintiff's complaint. But any issue with respect to L. C. L. units other than the one driven by the plaintiff is outside the scope of the pleadings and could not prevent summary judgment, if it is otherwise properly granted. And with respect to the possible negligence in the manner in which he operated his unit, it is undisputed from the affidavits that he slipped on ice which was covered to a depth of one inch by snow. The presence of the snow cover makes it impossible to assume that his actions caused the ice to form, for it indicates that the ice was present for longer than the time it took plaintiff to maneuver his unit up to the loading dock. Thus, it is clear that the only negligence for which plaintiff can recover in this action is that caused by the manner in which Kraft constructed and maintained its premises. And since the indemnity agreement does not expressly provide for the indemnification of Kraft when it is the solely negligent party, it is not applicable. Summary judgment dismissing the third-party complaint as to L. C. L. is proper.[3] Under the circumstances, it is not necessary to determine whether the

[2] *Mustas v. Inland Construction, Inc.* (1963), 19 Wis. 2d 194, 120 N. W. 2d 95, 121 N. W. 2d 274.

[3] Another way to reach the same conclusion is as follows: It is apparent that, apart from the invalid argument concerning L. C. L. units other than the one driven by the plaintiff, Kraft's claim that L. C. L. is negligent must rest on plaintiff's own conduct. But the conduct of an employee, which allegedly contributes to his own injury, cannot be imputed to the employer in an action by the employee to recover for his injury. Thus, plaintiff's negligence cannot be L. C. L.'s; and any recovery by the plaintiff will be based solely on Kraft's negligence.

injury arose in connection with the carriage of property under the indemnity agreement.

### 3. *Coverage under 1961 Insurance Policy.*

Carriers' policy issued to L. C. L. extended coverage to Kraft for liability sustained by it from "the use in its business of any motor vehicle or trailer owned and/or operated by or for the account of the assured." As noted above, it appears from the pleadings and affidavits that Kraft's liability to the plaintiff, if any, will be the result of its negligent maintenance and construction of its premises. Thus, the coverage issue presents only a question of law, which can be decided on summary judgment.

Kraft argues that the "use" provisions in liability policies are universally construed to include loading and unloading and that the plaintiff's injury occurred during the loading of his unit. There are cases holding that a "use" clause in a policy provides coverage for liability sustained in loading and unloading operations.[4] In Wisconsin, however, it has been stated in dictum that loading and unloading constitutes an additional risk beyond that contemplated by a "use" clause.[5]

Whether or not such a risk is an additional one need not be decided here, however, because, assuming *arguendo* that Kraft was using the unit at the time plaintiff was injured, it cannot be said that plaintiff's injuries were the proximate result of such use. The presence of the tractor-trailer unit in no way contributed to the presence of the ice which caused plaintiff's injury. At the most,

[4] *Great American Ins. Co. v. General Accident Fire & Life Assurance Corp.* (5th Cir. 1963), 321 Fed. 2d 948; *General Accident Fire & Life Assurance Corp. v. Hanley Oil Co., Inc.* (1947), 321 Mass. 72, 72 N. E. 2d 1; *Panhandle Steel Products Co. v. Fidelity Union Casualty Co.* (Tex. Civ. App. 1929), 23 S. W. 2d 799.

[5] *Raube v. Christenson* (1955), 270 Wis. 297, 305, 70 N. W. 2d 639.

the insured vehicle merely provided him with the means to transport himself to Kraft's premises, where independent forces cause him to slip and fall. Under the rule in *Raube v. Christenson*,[6] where there is no causal connection between the use and the acts causing liability, there is no coverage under the "use" clause. We think the rule is sound, because we doubt whether the parties intended coverage in such a situation. Accordingly, summary judgment dismissing the third-party complaint against Carriers is a proper disposition.

### 4. *Disallowance of Costs.*

Finally, there is the issue with respect to the denial of costs to L. C. L. and Carriers on their successful motions for summary judgment. In *Christie v. Lueth*[7] the defendants who were successful on summary judgment were awarded $10 as motion costs. The court stated the following:

". . . We consider that it was error to treat the granting of judgment as a mere motion and to allow only motion costs thereon to the prevailing party. We recognize that costs are largely in the discretion of the trial court, but it appears that the court was not exercising discretion but was proceeding on the mistaken assumption that the motion made, and not the judgment rendered, governed the costs recoverable. Judgment costs, not motion costs, should have been allowed to the defendants as directed by sec. 271.03, Stats."

As in that case, the trial court here acted on the assumption that the granting of summary judgment was a motion and exercised its discretion to deny costs. Sec. 271.07. Judgment costs are allowable to the defendants under sec. 271.03.

---

[6] *Id.*

[7] (1953), 265 Wis. 326, 335, 61 N. W. 2d 338.

*By the Court.*—Judgment modified, remanding the record to the trial court with directions to allow costs to respondents in compliance with sec. 271.03, Stats., and, as so modified, the judgment is affirmed. Respondents allowed costs on this appeal.